UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GLORIA JOHNSON-SCHMITT, CARA
YOUNGS, and CAMERON YOUNGS,

                                        Plaintiff,

        v.                                                          **DECISION AND ORDER**
                                                                     12-CV-260S
CAROLYN A. ROBINSON, individually and as
Dog Control Officer of Town of Concord; ERIE
COUNTY SHERIFF'S DEPARTMENT;
COUNTY OF ERIE, NEW YORK; JOHN DOE
NO. 1; JOHN DOE NO. 2; THE SOCIETY FOR
THE PREVENTION OF CRUELTY TO
ANIMALS, serving Erie County; LINDSEY M.
STYBORSKI, individually and as Peace Officer
of SPCA.

                                        Defendants.

## I.  INTRODUCTION

Plaintiffs commenced the present action pursuant to 42 U.S.C. § 1983 seeking

compensatory and injunctive relief for Defendants' alleged violations of their constitutional

rights.  The allegations in the complaint stem from Defendants' alleged searches of

Plaintiffs' property and seizure of animals purportedly belonging to Plaintiffs.  Presently

before this Court are the motions for summary judgment of Defendants County of Erie, Erie

County Sheriff's Department, and John Does 1 and 2; Defendants Society for the

Prevention of Cruelty to Animals ("SPCA") and Lindsey M. Styborski; and Defendant

Carolyn A. Robinson. The Court finds the motions fully briefed and oral argument

unnecessary.

## II. BACKGROUND

Plaintiffs live in the Town of Concord, where Defendant Carolyn A. Robinson has been employed as a Dog Control Officer since 2002. (Robinson Stmt ¶¶ 1-4; Affidavit of Carolyn A. Robinson ¶ 3, Docket No. 25.)   Robinson became familiar with Plaintiff Johnson-Schmitt[1] because of her admitted frequent failure to timely renew required dog licenses. (Robinson Stmt ¶¶ 22-23; Dep. of Plaintiff Gloria Johnson-Schmitt at 48, Ex F to Aff. of Jenna W. Klucsik, Esq.)   Plaintiff Johnson-Schmitt alleges that Robinson had a "strong personal dislike" for her and has allied herself with Plaintiff's estranged sister. (Compl. ¶¶ 31, 136-137.)

Plaintiffs assert that in July 2009, Robinson impermissibly entered her home without a warrant. (Compl. ¶¶ 175-178.) As described by Plaintiff, she and her son Chad were in the backyard when she heard something come up the driveway. (Pl's Dep at 63.) They then "went into the house and [Robinson] was walking back out." (Id.)  The parties agree that there is a "breezeway"  which connects the outside to the kitchen "after you go through the laundry room." (Id. at 66-67; Robinson Stmt. ¶¶ 30-34.)  Plaintiff saw Robinson coming out of the door "[b]etween the laundry room and the breezeway."  (Id. at 68.)  When asked at her deposition whether she knew if Robinson had gone into the kitchen, Plaintiff answered "[o]nly by the wet footprints that w[ere] on the floor." (Id.) She explained that the other household members were "off to camp" or at summer school. (Id.) When asked whether she knew for certain that those were Robinson's footprints, Plaintiff answered, "[a]bsolutely not." (Id. at 69.)

---

[1]Because many of the claims asserted relate only to this Plaintiff, she will be referred to as either "Plaintiff Johnson-Schmitt" or simply "Plaintiff," singular.

Robinson, in contrast, avers that she has "absolutely no memory of going to [Plaintiff's] house in July 2009, including the breezeway and kitchen." (Robinson Aff. ¶ 19.) Further, because the licenses for Plaintiff's dogs did not expire until August, there was no reason for Robinsion to have been there in July. (Id. ¶¶ 20-24.)

On December 2, 2009, Robinson met officers from the Erie County Sheriff's Department at the property of Jamie Dispenza.  (Robinson Stmt. ¶¶ 60-65; Robinson Aff. ¶¶ 34-37.)  Approximately 19 dogs were on the premises at that time, at least ten of which were puppies and none of which were licensed.  (Robinson Stmt. ¶¶ 67, 73; Pls' CounterStmt ¶ 73.)  Robinson observed that the conditions of the property were "horrible and unsanitary, with urine and feces throughout the house, and garbage on the floor." (Robinson Aff. ¶ 37; Robinson Stmt. ¶ 65.) None of the dogs had any tags or identification that would allow an owner to be identified. (Robinson Stmt. ¶¶ 81-82.) Plaintiff, however, alleges that five or six of those dogs, only one of which was an adult, in fact belonged to her. (Pl's Dep at 94-97.)

Robinson, aware that it was winter and the electricity at the property was about to be shut off, seized the dogs, taking three to a shelter on her own property and transferring the remainder to the SPCA. (Robinson Stmt. ¶¶ 70-72; Robinson Aff. ¶ 35.)  No SPCA representative was present at the property at the time of the seizure. (SPCA Stmt. ¶ 8; Aff. of Beth Shapiro ¶ 4, Docket No. 24-4.)  Jamie Dispenza redeemed only one dog from Robinson, a lab mix named Maggie. (Robinson Stmt. ¶ 76.)  The remaining two dogs that Robinson had sheltered were transferred to the SPCA, following which all of the unredeemed dogs seized on December 2, 2009 were adopted out by the SPCA. (Robinson Stmt. ¶ 78; Robinson Aff. ¶¶ 45-47.)

3

On January 11, 2010, Robinson obtained an "Order to Seize Dogs" signed by Town Justice Leslie Gibbon. (Robinson Stmt. ¶ 97; SPCA Stmt. ¶ 16; Erie County Defs' Stmt. ¶ 7.)  The Order indicated that a complaint had been made against Plaintiff with respect to the harboring of unlicensed dogs. (Ex. G to Robinson Aff.)  On January 13, 2010, Robinson, Erie County Sheriff's Office deputies, and SPCA employees – including Defendant Lindsey Styborski – arrived at Plaintiff's property. (Robinson Stmt. ¶ 100; SPCA Stmt. ¶ 17; Erie County Defs' Stmt. ¶¶ 5-9.)  Plaintiff Johnson-Schmitt was not home when the officials initially arrived, but was informed of their presence by her son William.  (Pl's Dep at 117-18; Robinson Stmt. ¶103; Erie County Defs' Stmt. ¶¶ 5-7.)  While on the phone with William, Plaintiff heard him order the officials to get out. (Pl's Dep at 118-19.)

Robinson averred that when she arrived at the property with the others, they knocked on an exterior door and received no response. (Robinson Aff. ¶ 55.)  She further asserts that, as they were standing in the yard, "one of the deputies thought he heard a child.  At that time, the deputies and people from the SPCA went into the house." (Id. at 56.)  "A young man arrived and told the deputies and the people from the SPCA to get out of the house, which they did." (Id. at 57.)

Plaintiff asserts that, when she arrived at the property, she "let the sheriff in because he said he had to come in, and I let the SPCA in." (Pl's Dep. 126.)  She further testified that a sheriff's deputy told her:

> I had to stand there and cooperate or else they was going to arrest me.  The kids would come home to no mom.  The police told me I had to be quiet and cooperate or else the kids were going to come home, and there wouldn't be a mother there, so they'd put me in jail.

(Id. at 127, 129; see Cara Youngs' Dep at 10-11, Ex G to Klucsik Aff.)

4

SPCA Officer Styborski asserted that she did not enter the premises until requested by the Erie County Sheriff's deputies "and at the invite of Plaintiff Gloria Johnson." (Aff. of Lindsey M. Styborski ¶ 14, Docket No. 24-3.)  Once inside, she "observed [a] large amount of feces and debris throughout the premises and numerous dogs suffering eye and ear infections." (Id. ¶ 14.) Styborski also observed "an extremely emaciated horse, several dogs, and deplorable conditions" outside the house. (Styborski Aff. ¶ 13.)

In contrast, Plaintiff described the inside of the house as having:

> pee pads over against the wall where the dogs went to the bathroom that I hadn't changed that morning because I was getting everybody off to school late.  Smokey[, Plaintiff Cameron Youngs' dog], had broke his chain, so we had put him in a kennel temporarily until Cameron could get back and put him back on a chain, fix the chain, because we were in a hurry because the kids missed the bus.  And dishes on the table from the kids eating breakfast. Other than that, fine.

(Pl's Dep at 127-28, 133; see Dep of Cameron Youngs at 9, Ex H to Klucsik Aff.)  When asked at her deposition, Plaintiff could not describe the conditions in the outdoor area where the dogs ran because she had not "been back there in months." (Pl's Dep at 133.)

SPCA Officer Styborski avers that she confirmed with Plaintiff that "she did not have licenses or ownership records for the numerous dogs harbored at the premises." (Styborski Aff. ¶ 15; see Pl's Dep at 122-123 (at least 3 dogs were unlicensed at that time).) Plaintiff stated during her deposition that she tried to show the dogs' shot records, which she had for all but four of them, but was told that the records were not "legitimate." (Pl's Dep at 131-32, 134.)  When asked "Did you or do you have any documents at all that would indicate that those dogs belonged to you or did belong to you," Plaintiff answered, "No." (Pl's Dep at 123.)

Fifteen dogs and one horse were seized that day and transferred to an SPCA

5

facility.  (Styborski Aff. ¶ 15; SPCA Stmt. ¶ 20.)  Robinson asserts that, despite having the authority to do so, she did not in fact seize any of the animals that day, but simply "lent the SPCA some of the crates [she] had in [her] vehicle." (Robinson Aff. ¶¶ 59-64.)  Plaintiff Cara Youngs testified at her deposition, however, that Robinson came back later that day with a police officer and took her dog Sasha away.  (Cara Youngs' Dep at 12, 25; see id. at 12 (2 of the dogs seized belonged to Cara).)  The three Plaintiffs were subsequently charged with animal cruelty pursuant to Agriculture and Market Law § 353, specifically "overdriving, torturing and injuring animals."  (Styborski Aff. ¶ 16, Ex. C; Robinson Stmt. ¶ 117.)

Robinson and the SPCA Defendants assert that, other than an attempt to belatedly license Ms. Youngs' dogs, none of the Plaintiffs attempted to redeem any of the dogs seized on January 13, 2010. (SPCA Stmt. ¶ 23; Robinson Stmt. ¶ 116.)  Plaintiff testified that she went to the town clerk with Plaintiff Cara Youngs "to try to license her Yorkies." (Pl's Dep at 141-42.) The town clerk stated that a call was necessary to make sure the clerk could "get the dog[s] back before you license them." (Id. at 142.) Plaintiff testified that "we called from the town clerk's office, and they said that it was still under investigation, so we didn't license them." (Id.)  Plaintiff further testified that she called the SPCA "[p]robably about three or four days afterwards," spoke to "[w]hoever answered the phone," and was told the dogs were "still being investigated and processed." (Id.)  Plaintiff did not call again because her attorney told her "don't bother." (Id. at 142-43.) When she was asked, Plaintiff Cara Youngs stated that she "didn't know how" to try and get her two dogs back. (Cara Youngs Dep at 28-29.) Plaintiff Cameron Youngs answered that he took no steps to get his dog back, and when asked why, stated "I don't know." (Cameron Youngs Dep at 16.)

On July 12, 2010, all three Plaintiffs appeared in Town Court for the Town of Concord. (See Court Transcript, Ex I to Klucsik Aff., Ex E to Styborski Aff.)  The prosecutor indicated that "after protracted negotiations, the defendants [Plaintiffs in the current case] have agreed to accept an adjournment in contemplation of dismissal conditioned on the signing over of the five licensed dogs that were listed to Ms. Johnson and her children and signing over the horse at issue as well and [sic] the licensed dogs." (Id. at 3.)  Plaintiffs' counsel for that proceeding, in response to the court's inquiry as to how many animals were at issue, stated that he believed "there's 15 dogs and one horse.  The reason – the dogs were at issue.  There was no proof of ownership provided and there's the five day statutory period for the SPCA to dispose of [them] to homes." (Id. at 4.) Counsel further clarified for the court that proof of ownership had not been provided for ten of the dogs seized, therefore after a statutory five day waiting period, they became "property of the SPCA.  All of those dogs were adopted." (Id. at 9-10.)

With respect to the seizure of the unlicensed dogs, Plaintiffs' counsel stated that it appeared any authority was "kind of consensual" in that if an owner refused to turn over a dog to an animal control officer with a seizure order, the officer would "have to go back to court and ask for a warrant." (Id. at 13.)  Counsel agreed with the court, however, that the issue was not relevant at that time. (Id. at 14.)  After confirming that any seized animals not already adopted from the SPCA would be surrendered and that Plaintiffs would obtain no new animals for the duration of the adjournment, the court consented to the agreed disposition.  (Id. at 15-18.)  Notably, there is nothing in the present record that would indicate Plaintiffs failed to comply with the conditions of the six-month ACD or that the charges were ultimately dismissed. (See Compl. ¶¶ 102-103, 112-113, 123-124 (alleging

7

upon information and belief that all charges were dismissed with prejudice).)

Finally, on July 15, 2010, as the result of an alleged "ticket-writing campaign" against her, Plaintiff Johnson-Schmitt was arrested following her non-appearance at an adjourned court date associated with one of these traffic tickets. (Compl. ¶¶ 138-149.) Plaintiff was held in the Erie County Holding Center for approximately five to six hours. (Compl. ¶¶155, 158-170; Pl's Dep at 170-71.)   It is alleged in the Complaint that the arresting officer detained Plaintiff to allow Defendant Robinson time to "enter onto [Plaintiff's] premises for the purpose of searching, seizing and otherwise attempting to cause legal troubles and harm for and to Plaintiff." (Compl. ¶¶ 156-57.)

Plaintiffs commenced the instant action in this Court on March 30,

## III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248), cert denied, 540 U.S. 811 (2003).  A court must also "construe the facts in the light most favorable to the non-moving

8

party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Plaintiffs' claims primarily seek damages pursuant to 42 U.S.C. § 1983 for alleged violations of their constitutional rights. This section imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. Section 1983 does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). An affirmative defense of qualified immunity exists in a § 1983 action to shield:

> a defendant official sued in his individual capacity from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or, even where the rights were clearly established, if it was objectively reasonable for the official to believe that his acts did not violate those rights.

Frank v. Relin, 1 F.3d 1317, 1328 (2d Cir. 1993), cert denied, 510 U.S. 1012 (1993) (internal quotation marks, brackets, and citation omitted). This defense reflects the "concern that for the public benefit, public officials be able to perform their duties unflinchingly and without constant dread of retaliation." Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010). The applicable standard "is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " Amore, 624 F.3d at 530.

## A.     Plaintiffs' Claims against the County Defendants

Plaintiffs have consented to the dismissal of all claims against the Erie County

Defendants except the twelfth cause of action against the County itself.[2] (Pls' Mem of Law in Opp'n at 19-20, Docket No. 31.)  Therein Plaintiffs allege that the conditions of the Erie County Holding Center on July 15, 2010 were unconstitutional, violating Plaintiff Johnson-Schmitt's substantive due process rights.  (Compl. ¶¶ 280-86.) Plaintiffs further allege that Defendant Erie County "knew or should have known" of these conditions, and this defendant's "deliberate indifference (or deliberate malice) constitutes a policy or custom actionable under a 42 U.S.C. § 1983 claim." (Compl. ¶¶ 281-284.) Defendants argue that this claim must be dismissed because (1) Plaintiffs failed to demonstrate that there was a municipal policy or custom that caused the injury, and (2) even assuming the allegations to be true, Plaintiffs failed to establish the objective element of the deliberate indifference standard. (County Defs' Mem of Law at 9-13.)

"A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who ... subject[ed], or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (quoting 42 U.S.C. § 1983), cert denied, 480 U.S. 916 (1987); see Connick v. Thompson, __ U.S. __,131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011); Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  This requires more than a mere assertion that a municipality has such a custom or policy. Ying Jing Gan v. City of

---

[2]Although Plaintiffs do not specifically mention this named defendant, Defendants correctly assert that the Erie County Sheriff's Department is not a separate legal entity capable of being sued individually. See Holley v. County of Orange, 625 F. Supp. 2d 131, 144 (S.D.N.Y. 2009) (dismissing claims against sheriff's department because it did not have a separate legal identity from the county itself);  Baker v. Willett, 42 F.Supp.2d 192, 198 (N.D.N.Y. 1999) (a police department is an administrative arm of a municipal corporation and does not have a separate legal identity).

New York, 996 F.2d 522, 536 (2d Cir.1993).

Plaintiffs assert that Defendant Erie County is liable because its officials knew or should have known of the unconstitutional conditions in the holding center and were deliberately indifferent to those conditions. (Compl. ¶¶ 280-286; Pls' Mem of Law in Opp'n at 19-20.) Under this theory, municipal liability exists "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a [municipal] policy or custom that is actionable under § 1983." Amnesty America v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (internal quotation marks omitted); see Cash v. County of Erie, 654 F.3d 324, 334 (2d Cir. 2011), cert denied, 132 S. Ct. 1741 (2012).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 131 S. Ct. at 1360 (internal quotation marks and brackets omitted); see Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L. Ed. 2d 626 (1997); Cash, 654 F.3d at 334.  The operative inquiry is whether the facts of a particular case "demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" Cash, 654 F.3d at 334 (quoting Amnesty America, 361 F.3d at 128).

In other words, a plaintiff must establish that, objectively, the risk of deprivation was so obvious that a municipality official should have known of it.  Cash, 654 F.3d at 341 n. 8 (citing Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)).  This can be shown "through proof of repeated complaints of civil rights violations . . . if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Vann, 72 F.3d at 1049. "Deliberate indifference may also be

shown through expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments and was particularly dangerous because it presented an unusually high risk that constitutional rights would be violated." Vann, 72 F.3d at 1049 (internal quotation marks omitted).

Defendants correctly argue that Plaintiffs failed to allege unconstitutional conditions that "were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012), cert denied, 134 S. Ct. 125 (2013). Further, the only evidence on which Plaintiffs rely in opposition to the Erie County Defendants' motion is two pages of deposition testimony from Plaintiff Johnson-Schmitt. (See Pl's Mem in Opp'n at 20.) Plaintiff Johnson-Schmitt asserted therein that there was a toilet in the holding room but no door and no toilet paper. (Pl's Dep at 170-171.)  Plaintiff requested toilet paper, but despite the presence of a "young lady . . . [who] needed toilet paper because she just had had a baby, there was blood everywhere[], . . . we couldn't get none." (Id.) Plaintiff Johnson-Schmitt agreed therein that she was in the Holding Center for no more than six hours during the day. (Pl's Dep at 170-171.)

Plaintiff's reliance on Zolnowski v. Coutny of Erie, in which the Defendant County was found to have been deliberately indifferent to overcrowding problems at the holding center, does not support a finding of deliberate indifference here.  944 F. Supp. 1096, 1117-18 (W.D.N.Y. 1996).  In addition to there being no allegation that such overcrowding continued since 1996, that finding was supported by, among other things, correspondence between state officials and the county defendants establishing knowledge that this improper condition had existed for years. Id. Further, Plaintiffs concede in their brief that

"the unconsitutional conditions identified in the Zolnowski decision . . . have now been rectified."  (Pls' Mem of Law in Opp'n at 20.)

There is insufficient evidence in this record from which a jury could conclude that the Defendant County was aware of and ignored the violation of constitutional rights or the high risk thereof. Accordingly, even assuming that the conditions described were sufficiently serious so as to amount to a deprivation of the minimal civilized measure of life's necessities,[3] Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013), the Erie County Defendants are entitled to dismissal of the complaint as against them.

## B.   Defendant Robinson's July 2009 Warrantless Search

Plaintiffs' first cause of action alleges that Defendant Robinson improperly entered Plaintiff Johnson-Schmitt's house in July 2009 without consent or a lawful warrant.[4] (Compl. ¶¶ 30, 34-36, 175-178.)  Defendant Robinson argues that this claim should be dismissed because Plaintiffs did not have a reasonable expectation of privacy in the "breezeway" allegedly entered by Defendant.  (Robinson Mem of Law at 3-7.)

"Absent evidence of intent to exclude the public, the entryway to a person's house offers implied permission to approach and knock on the front door." People v. Koslowski, 69 N.Y.2d 761, 763, 505 N.E.2d 611 (1987); see United States v. Titemore, 437 F.3d 251, 259 (2d Cir. 2006) (diminished expectation of privacy associated with principal

---

[3] Although a pre-trial detainee's challenge to the conditions of her confinement is properly reviewed under the due process clause of the Fourteenth Amendment, the standard for evaluating deliberate indifference to the health or safety of a person in custody is the same irrespective of whether the claim is brought under the Eighth or Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 70, 72 (2d Cir. 2009).

[4] Plaintiffs have withdrawn their second cause of action alleging a November 2009 warrantless entry by Defendant Robinson. (Pls' Mem of Law in Opp'n at 2.)

entranceway to home).  As Defendant Robinson notes, Plaintiffs do not dispute that the breezeway, which connects the outside of the house to a laundry room outside the kitchen, is such an entryway.  (Robinson Reply Mem of Law at 2; Pls' Mem of Law in Opp'n at 9.) Nonetheless, Plaintiff testified that she saw Defendant Robinson coming out of the doorway "[b]etween the laundry room and the breezeway," in other words, from the direction of the kitchen rather than the outside.  (Pl's Dep at 68.)  She also testified that there were wet footprints in the kitchen which indicated to her that Defendant Robinson had been inside the house proper. (Id.) Although Plaintiff could not be absolutely sure that the footprints belonged to Robinson, she testified that the footprints did not belong to her or her son, and the other children were away from the house that day.  (Id. at 68-69.) Thus, although the evidence is circumstantial, a jury could still conclude that Defendant Robinson made a warrantless entry into the home's interior. Summary judgment dismissing this cause of action at this point would be improper.

## C.     The December 2009 Seizure of Dogs

The third through seventh and ninth causes of action arise out of Defendant Robinson's warrantless seizure of five to six dogs allegedly belonging to Plaintiff Johnson-Schmitt from the house of Jamie Dispenza and the subsequent transfer of those dogs to the SPCA.  Specifically, Plaintiffs assert that these Defendants violated Plaintiff Johnson-Schmitt's Fourth Amendment right to be free from unreasonable seizure (Compl. ¶¶ 183-187, 189-193), and that the retention of the dogs by Defendant Robinson and the SPCA constituted conversion of personal property under New York law and deprived her of

property without due process of law. (Compl. ¶¶ 188, 194-231, 238-275[5].)  The seventh cause of action similarly alleges that Defendants Robinson and the SPCA "as policy makers" deprived Plaintiff Johnson of the due process of law to which she was entitled with respect to these dogs. (Compl. ¶¶ 232-234.)

Underlying each of these claims is the issue of whether Plaintiff had an ownership or possessory interest in any of the dogs seized in December 2009.  See Pappas v. Tzolis, 20 N.Y.3d 228, 234, 982 N.E.2d 576 (2012) (key element of conversion is possessory right or interest in property); Fiorenti v. Cent. Emergency Physicians, PLLC, 305 A.D.2d 453, 454-55, 762 N.Y.S.2d 402 (N.Y.A.D. 2d Dep't 2003) (same); see also Bryant v. New York State Educ. Dept., 692 F.3d 202, 218 (2d Cir. 2012) (procedural due process claim requires showing of a property or liberty interest that was deprived); Shaul v. Cherry Valley-Springfield Cent. School Dist., 363 F.3d 177, 185 (2d Cir. 2004) (a "seizure" within the meaning of the Fourth Amendment requires "some meaningful interference with an individual's possessory interest in [his or her] property").

This Court agrees with Defendants that Plaintiff Johnson-Schmitt relinquished any property rights she had in the dogs that she transferred to Jamie Dispenza. (Robinson Mem of Law at 11-13; SPCA Mem of Law at 6.)  "The abandonment of property is the relinquishing of all title, possession, or claim to or of it-a virtual intentional throwing away of it. It is not presumed. Proof supporting it must be direct or affirmative or reasonably beget the exclusive inference of the throwing away." United States v. Cowan, 396 F.2d 83,

---

[5]Although the point heading for the ninth cause of action states the claim relates to dogs seized on January 13, 2010, the following allegations all pertain to the December 2009 seizure of dogs at the Dispenza residence.

87 (2d Cir.1968) (quoting <u>Foulke v. New York Consol. R.R. Co.</u>, 228 N.Y. 269, 273, 127

N.E. 237 (1920)); <u>see</u> <u>Hoelzer v. City of Stamford, Conn.</u>, 933 F.2d 1131, 1138 (2d Cir.

1991).

Here, Plaintiff conceded at her deposition that she gave the dogs to Dispenza

without expectation of either payment or retention of control:

> Q.     . . . [J]ust one question about the dogs that you gave to Mr. Dispenza.
> You testified earlier that you gave five to six dogs to Mr. Dispenza so
> he could find good homes for them; correct, is that your testimony?
>
> A.     Yes.
>
> Q.     So that means you just gave him the dogs and he would do what he'd
> want with them in finding a home?
>
> A.     He was supposed to get them a home, yes.
>
> Q.     Okay.  Not to sell them?
>
> A.     No, there was no money exchanged between us.
>
> Q.     And you didn't expect and money to come from Mr. Dispenza to you
> regarding the dogs –
>
> A.     No.

(Pl's Dep at 171-72.)  She further testified that Dispenza never sold dogs for her and she

received "[a]bsolutely not a penny" from him for the sale of dogs at any time. (<u>Id</u>. at 92-93.)

Plaintiff never expected Dispenza to return the dogs, instead what he did with them "was

up to him.  His kids liked them and I gave them to him."  (<u>Id</u>. at 100.)  This testimony that

she expected neither monetary compensation nor any control over the final disposition of

the dogs, combined with the fact that Plaintiff did in fact turn the five or six dogs in question

over to Dispenza, constitutes "proof both of [her] intent to abandon the property and of

some affirmative act or omission demonstrating that intention." <u>Hoelzer, Conn.</u>, 933 F.2d

at 1138.  The conclusory assertion that Plaintiff's "reference to having 'given' the dogs to Mr. Dispenza was not intended to mean transfer ownership to him" is insufficient to raise a material issue of fact in opposition. (Pls' Counterstatement of Facts ¶ 84, Docket No. 31-1.) Plaintiff Johnson-Schmitt therefore abandoned any property interest in these dogs prior to their seizure by Robinson and transfer to the SPCA.

Plaintiff also asserts that Dispenza had given one of the dogs seized from his home, a Maltese puppy, to her. (Pl's Dep at 101.)  Although she testified that it was "understood" that "it was [her] puppy," when asked if the dog was licensed, she answered "[t]hat was Jamie's job, not mine.  It was his house, his dog." (Id. at 102.)  Further, as Defendant Robinson argues, there was no actual or constructive delivery of the puppy to Plaintiff, an essential element of a valid *inter vivos* gift. Gruen v. Gruen, 68 N.Y.2d 48, 56-7, 496 N.E.2d 869 (1986); Bently v. Dox, 295 A.D.2d 952, 953, 744 N.Y.S.2d 598 (N.Y.A.D. 4th Dep't 2002).

Accordingly, in the absence of a property interest in any of the dogs seized from the Dispenza residence in December 2009, Defendants are entitled to summary judgment on the third through seventh and ninth causes of action.

**D.    The January 2010 Search and Seizure of Dogs from Plaintiffs' Premises.**

Plaintiffs' eighth, tenth, eleventh and thirteenth causes of action consist of claims based on the warrantless search of Plaintiffs property on January 13, 2010, the seizure of animals from the property that day, and the subsequent adopting-out of six of the seized dogs.  Plaintiffs assert Defendants Robinson, Styborski, and the SPCA violated Plaintiffs' constitutional right to be free from unreasonable searches and seizures, and deprived Plaintiffs of property without due process of law. (Compl. ¶¶ 235-237, 276-278, 287-289.)

17

Plaintiffs also allege that the adopting out of the six seized dogs constituted conversion under New York law. (Compl. ¶ 279.)

      1.   <u>Effect of the Criminal Proceeding</u>

Defendants argue that Plaintiffs failed to challenge the legality of the search and seizure of dogs in January 2010 during the resulting criminal proceeding and are therefore precluded from doing so in the present action. (Robinson Mem of Law at 16-18; SPCA Mem of Law at 6-8.) They initially argue that this case is analogous to <u>Spinks v. Orleans County</u>, No. 10-CV-745A, 2011 WL 2491001 (W.D.N.Y.  June 22, 2011).  There, the plaintiff's § 1983 action followed his guilty plea to a misdemeanor for improper-shelter charges and his acceptance of an adjournment in contemplation of dismissal with respect to additional animal cruelty charges. <u>Spinks</u>, 2011 WL 2491001 at * 3.  This Court dismissed the unconstitutional search and seizure claims based on the plaintiff's failure to raise this issue in state court. <u>Id</u>. at *8. In addition to finding consideration of this issue barred by the full faith and credit doctrine, the Court held that the plaintiff was collaterally estopped from relitigating the validity of the warrant where he had "ratified the decision to issue the warrant and all of the criminal proceedings that occurred in state court by *taking a guilty plea*."  <u>Id</u>. at *8 (emphasis added).

Here, however, the criminal proceeding at issue resulted only in an adjournment in contemplation of dismissal ("ACD") without a concurrent guilty plea to a related charge. An ACD is a compromise into which the accused and the prosecution have entered voluntarily, and this agreement is "as unadjudicative of innocence as it [is] of guilt." <u>Hollender v. Trump Village Co-op., Inc.</u>, 58 N.Y.2d 420, 426, 448 N.E.2d 432 (1983); <u>see</u> <u>Smith-Hunter v. Harvey</u>,  95 N.Y.2d 191, 196, 734 N.E.2d 750 (2000); <u>Singleton v. City of</u>

New York, 632 F.2d 185, 193 (2d Cir. 1980) (an ACD is not the equivalent of a verdict), *cert denied*, 450 U.S. 920 (1981); see generally N.Y. C.P.L. § 170.55 (8) (the granting of an ACD is neither "a conviction or an admission of guilt").  Thus, the acceptance of an ACD will bar a § 1983 claim for false arrest or malicious prosecution because it does not constitute a termination favorable to the § 1983 plaintiff, an essential element of such claims. Johnson v. Bax, 63 F.3d 154, 157 (2d Cir. 1995); Hollender, 58 N.Y.2d at 425-26. Similarly, because "[a]n ACD is emphatically not a determination on the merits," Matter of Marie B., 62 N.Y.2d 352, 359, 465 N.E.2d 807 (1984), it cannot be concluded that the propriety of the underlying search and seizure was an issue ". . . actually litigated or decided by a court of competent jurisdiction in a prior action. . ." Spinks, 2011 WL 2491001 at *8 (quoting Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008)).

Further, contrary to Defendants' arguments, there is no resulting criminal conviction that could be called into question by the proceedings.[6] Cf. Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (a plaintiff may not bring a § 1983 claim for monetary damages for an allegedly unconstitutional conviction or imprisonment resulting from a conviction that has not otherwise been invalidated).  Finally, although New York's criminal procedure law requires a suppression motion to be made "before or in the course of a criminal action," N.Y. CPL § 710.70(3), the issuance of an ACD suspends rather than resolves the criminal proceedings. See generally Matter of Edwin L., 88 N.Y.2d

---

[6]For this reason, the Court disagrees with the reasoning in Shaughnessy v. Garrett, No. 5:06-CV-103 (FJS/GHL), 2006 WL 3146355 (N.D.N.Y. Oct. 30, 2006), wherein the plaintiff's 1983 claims were dismissed because a favorable judgment on her search and seizure claims "would 'necessarily imply' the invalidity of the ACD entered on the charges against her." Id. at *2 (quoting Heck, 512 U.S. at 487).  The analysis might be different if a section 1983 claim were raised prior to the successful completion of the conditions of an ACD, but no such argument is raised here.

593, 602, 671 N.E.2d 1247, 1250 (1996). Indeed, Plaintiffs' criminal defense counsel even informed the court of the search and seizure argument he would have raised if the criminal proceeding had continued.  (Court transcript at 13-14.) Accordingly, consideration of the issues raised here will therefore run afoul of neither the full faith and credit doctrine, the doctrine of collateral estoppel, nor the Supreme Court's ruling in Heck.

2.    January 2010 Warrantless Search

Plaintiffs' eighth and thirteenth causes of action seek damages for the illegal search of their premises by Defendants Robinson, Styborski, and the SPCA.[7] Absent exigent circumstances, "[w]arrantless searches inside a home are presumptively unreasonable." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (citing Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)). Notably, Defendants do not argue that the 'Order to Seize Dogs' constituted a valid search warrant for Plaintiffs' home.

With respect to Defendant Robinson, there is no admissible evidence that she entered the home prior to Plaintiff granting permission.  (Pl's Dep at 126-29; see Cara Youngs Dep at 8-10.)  Although Plaintiff testified that her son William told her that he saw "the sheriff's department, the SPCA, and Carolyn Robinson" inside the house, this constitutes inadmissible hearsay which is insufficient to defeat summary judgment. (Pl's Dep at 118-20; see Robinson Mem of Law at 14-15 ); see Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010) (a court may rely only on admissible evidence in determining summary judgment motion). Further, although Plaintiff's testimony that a "[p]olice officer" told her to allow them in or she would go to jail raises a material issue of fact with respect

---

[7]As noted above, Plaintiffs have already consented to the dismissal of the Complaint against Defendants John Doe #1 and #2 and "Kandefer." (Pls' Mem of Law in Opp'n at 2.)

to that consent, there is no evidence that Robinson heard the unnamed officer make this threat or that she otherwise has any knowledge of the alleged coercion. (Pl's Dep at 126-27.) It was therefore "objectively reasonable for [Defendant Robinson] to believe that [her] actions did not violate plaintiff's clearly established rights." Micalizzi v. Ciamarra, 206 F. Supp. 2d 564, 577 (S.D.N.Y. 2002) (citing Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L. Ed. 2d 396 (1982)). As such, Defendant Robinson is entitled to qualified immunity with respect to the eighth cause of action.

The thirteenth cause of action seeks to hold Defendant Styborski in her individual capacity and the SPCA liable for the alleged warrantless search.[8] (Compl. ¶¶ 287-89.) In addition to the ACD arguments already rejected above, these Defendants argue that Officer Styborski remained outside the house until invited in by Plaintiff. (SPCA Mem of Law at 3; Styborski Aff. ¶¶ 13-14.) Plaintiffs, however, highlight Defendant Robinson's averment that "the deputies and people from the SPCA went into the house" prior to the arrival of Plaintiff or her son. (Pl's Mem of Law at 8 (citing Robinson Aff. ¶¶ 56).) There is therefore a triable issue of fact as to when Styborski entered the home. Further, because the record is not developed enough to determine whether Styborski is entitled to qualified immunity, summary judgment on this claim would be inappropriate as to this Defendant at this time.

Because no distinction is made in Defendants' arguments between the SPCA and Officer Styborski, the same conclusion must apply to the latter as well. Notably, "[p]rivate

---

[8]These defendants do not dispute that they may properly be considered state actors for the purpose of the present § 1983 claims. See generally Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012) (discussing analysis of when a private entity acts under color of state law for § 1983 purposes).

employers are not liable under § 1983 for the constitutional torts of their employees." Rojas v. Alexander's Dept. Store, Inc., 924 F.2d 406, 408-9 (2d Cir. 1990), cert denied, 502 U.S. 809 (1991); Meijia v. City of New York, 119 F. Supp. 2d 232, 275 (E.D.N.Y. 2000). As with a municipal corporation, a plaintiff must establish that an employee or official of a private corporation took " 'action pursuant to official ... policy of some nature caused a constitutional tort.' " Rojas, 924 F.2d at 408 (quoting Monell v. Dep't of Social Serv. of the City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)) (emphasis in original). Here, the record is devoid of any evidence or allegation that the SPCA had a policy or practice of making such warrantless entries. Rojas, 924 F.2d at 409 (absent evidence of store policy of arresting shoplifters without probable cause, § 1983 claim must be dismissed against store); see Meijia, 119 F. Supp. 2d at 275 (no liability for private employer absent evidence of unconstitutional policy or practice). Defendants have not raised this issue, however, and sua sponte dismissal would be inappropriate absent notice an opportunity to be heard. Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991); see Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000) ("Generally, courts should not raise sua sponte nonjurisdictional defenses not raised by the parties."). Summary judgment is therefore denied with respect to the thirteenth cause of action as against the SPCA as well.

### 3. Deprivation and Conversion of Property Without Due Process

In their tenth cause of action, Plaintiffs allege that, by seizing six dogs which were not the basis of any subsequent criminal charges, Defendants Robinson and the SPCA "as policy makers" deprived Plaintiff Johnson-Schmitt of property without due process of law. (Compl.¶¶ 276-278.) Defendant Styborski is not named in this cause of action. The eleventh cause of action alleges that the SPCA's seizure, acquisition and subsequent

disposition of these dogs constituted the improper conversion of Plaintiff Johnson-Schmitt's personal property under New York law. (Compl. ¶¶ 279.)

Defendant Robinson is correct that she is entitled to summary judgment on this claim. The only dogs at issue in this cause of action are six dogs owned by Plaintiff Johnson-Schmitt. (Compl. ¶ 278.) As such, Plaintiff Cara Young's testimony that Defendant Robinson returned to the house later that day and seized a dog she personally owned and which was the subject of one of the cruelty charges, is irrelevant. (Cara Youngs' Dep at 12, 24-25; see Styborski Aff. Ex. C (criminal complaints) and Ex E (Court transcript at 6).) In contrast, Plaintiff Johnson agreed at her deposition that none of the dogs were seized by Defendant Robinson, further testifying that "[a]s far as I know the SPCA got them all." (Pl's Dep at 138.) Further, it is unclear how Plaintiffs intended to hold Defendant Robinson liable as a "policy maker." Although "a single act of an employee with final policymaking authority in the particular area involved" may render the employing corporation liable under § 1983, Mejia, 119 F.Supp.2d at 275, Robinson is not employed by the SPCA and there is no evidence or allegation that she was integral in establishing an unconstitutional policy or practice for her employer, non-defendant Town of Concord. (See Robinson Aff. ¶ 3.)

With respect to the SPCA, this Defendant argues that it had the "probable cause to arrest Plaintiffs and seize their animals" in January 2010 based on the deplorable conditions of the premises and the animals, as well as the failure to license many of the dogs. (SPCA Mem of Law at 9-10.) Although not expressly clear from the complaint, Plaintiff's opposition clarifies that her property rights were allegedly interfered with not by the initial seizure, but by the adopting out of the six dogs in question without sufficient

notice and an opportunity to redeem these animals.  (Pl's Mem of Law at 16-18.)  These

dogs ranged in age from 2 to "5+" months, and none were the subject of any of the

surrender agreements signed in connection with the ACD. (Affirm. of David J. Seeger, Esq.

¶ 3; Styborski Aff. Ex. D (surrender agreements).) Instead, it was acknowledged at

Plaintiffs' July 12, 2010 appearance before the Concord Town Court that those dogs not

subject to the pending charges had previously been found by the SPCA to be statutorily

abandoned and were therefore adopted out. (Styborski Aff. Ex. E (Court Transcript at 8-10,

15.)

Pursuant to New York Agriculture and Markets Law, any dog four months of age or

older must be licensed. N.Y. Agric. & Mkt. Law § 109(1)(a). A dog control officer or peace

officer may seize any dog that is not licensed, whether on or off the owner's premises.

N.Y. Agric. & Mkt. Law §§ 117 (1)(b).[9]

> Promptly upon seizure of any identified dog, the owner of record of such dog
> shall be notified personally or by certified mail, return receipt requested, of
> the facts of seizure and the procedure for redemption. If notification is
> personally given, such dog shall be held for a period of seven days after day
> of notice, during which period the dog may be redeemed by the owner. If
> such notification is made by mail, such dog shall be held for a period of nine
> days from the date of mailing, during which period the dog may be redeemed
> by the owner. In either case, the owner may redeem such dog upon payment
> of the impoundment fees prescribed by subdivision four of this section and
> by producing proof that the dog has been licensed.

N.Y. Agric. & Mkt. Law § 117(6). An owner who fails to redeem a dog at the end of the

appropriate redemption period forfeits title, and the dog may, among other things, be made

available for adoption. N.Y. Agric. & Mkt. Law § 117(7).

Plaintiffs argue that Plaintiff Johnson-Schmitt was never given notice of the

---

[9]At all relevant times, the provisions currently found under § 117 appeared under § 118.

procedure for redemption of the seized unlicensed dogs as required by § 117. (Pls' Mem of Law at 12-14, 16-18.)  They further argue that § 117 did not give the SPCA the authority to adopt out those dogs that, due to their age, were not yet required to be licensed and which were not  the subject of cruelty charges.  (Pls' Mem of Law at 17.)  The SPCA does not specifically address these arguments with respect to either the § 1983 or conversion claim.  As such, summary judgment is inappropriate.

## IV. CONCLUSION

For the reasons stated above, the summary judgment motion of the Erie County Defendants is granted and the complaint is dismissed as against them in its entirety.  The motions of Defendant Robinson and the SPCA Defendants are granted in part and denied in part. The second through ninth and twelfth causes of action are dismissed. Plaintiffs' first, tenth, eleventh, and thirteenth causes of action remain viable at this time to the extent stated above.

## V. ORDERS

IT HEREBY IS ORDERED that the summary judgment motion of Defendants County of Erie, Erie County Sheriff's Office, John Doe #1 and John Doe #2 (Docket No. 23) is GRANTED;

FURTHER, the summary judgment motion of Defendants Lindsey Styborski and the SPCA (Docket No. 24) is GRANTED IN PART and DENIED IN PART;

FURTHER, that the summary judgment motion of Defendant Carolyn A. Robinson

(Docket No. 25) is GRANTED IN PART and DENIED IN PART.


      SO ORDERED.

Dated: December 26, 2013
      Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court
